Argued and submitted December 2, 1982, reversed May 3, 1983

YAMHILL COUNTY,
*Respondent on Review,*
*v.*
LUDWICK et al,
*Petitioners on Review.*

(LUBA 80-154; 80-155 (Consolidated);
CA A21985; SC 28828)

663 P2d 398

Robert L. Liberty, Portland, argued the cause and filed the brief for petitioners.

Daryl S. Garrettson, McMinnville, argued the cause and filed the brief for respondent.

Before Lent, C. J., Linde, Peterson, Campbell, Roberts and Carson, Justices.

CAMPBELL, J.

---

*57 Or App 764, 646 P2d 1349 (1982). Appeal from the Land Use Board of Appeals. 3 Or LUBA 271 (1981).

**CAMPBELL, J.**

These consolidated cases[1] involve conditional use permits and variances granted by Yamhill County to Doug Ingram, the owner of a 4.7 acre tract, and to William Long, the owner of a five acre tract. The permits and variances would allow the owners to construct single family dwellings on the tracts in the area which was designated in the acknowledged Yamhill County Comprehensive Plan as commercial forest and zoned F-40 (Forest-40 acre minimum).

Ludwick and Moorhead, the petitioners on review here, are members of a neighboring homeowners association which maintains a public road that provides the only access to the tracts in question. They appealed the decisions of the Yamhill County Commissioners to the Land Use Board of Appeals (LUBA) which held that the county's decisions were in error. The county then appealed to the Court of Appeals which reversed LUBA's order.

We granted Ludwick and Moorhead's petition for review and find it necessary to consider only two issues: (1) Was LUBA's determination that Ludwick and Moorhead had standing to appeal supported by substantial evidence, and (2) Are the Ingram and Long tracts "existing legal lots of record" as that term is used in the county ordinance so as to qualify them for conditional use permits? We find that Ludwick and Moorhead had standing to appeal and that the Ingram and Long tracts were not "existing legal lots of record." Therefore we reverse the Court of Appeals. Because of this result we do not reach a third issue of whether Yamhill County violated its ordinance standards in granting a variance reducing the required minimum lot size.

In the late 1960's and early 1970's, a land developer by the name of Hemstreet attempted to plat, subdivide or partition,[2] and sell lots or tracts in an area of Yamhill County which is approximately six miles west of McMinnville. He was only partly successful, but the tracks that he

---

[1] The Ingram application and the Long application were handled as separate matters at the county level but were consolidated on appeal to LUBA.

[2] Throughout the record, the terms "subdivision" and "partition" seem to be used interchangeably. Sometimes the term "parcelization" is used. The distinction between a "subdivision" and a "partition" is immaterial to the issues in this case.

left are still haunting everyone currently involved with the area.

The area in which the Ingram and Long tracts are located has become known as the "Eagle Point Ranch." The subdivision or partition plan submitted by Hemstreet in 1969 for the area including the Ingram tract was not approved by Yamhill County because of "lack of access." The plan submitted for the area including the Long tract was approved in 1970 "upon condition that provisions be made * * * for upgrading of roads." Even though the one subdivision was not approved and the roads were not upgraded in the other, the developer continued to sell numerous tracts including sales to Ingram's and Long's predecessors in interest.[3] Virtually all the tracts were sold by 1972.

Adjoining the Eagle Point Ranch to the east is an approved subdivision which has become known as the Meadow View Estates.[4] Hemstreet also developed the Meadow View Estates and it was approved by Yamhill County in 1972. The public road that runs through the Meadow View Estates for a distance of one mile is the only access to the Eagle Point Ranch. (See Appendix A.) The Meadow View Estates has a separate homeowners association. Ludwick and Moorhead are members of that association.[5]

---

[3] In 1971, the developer executed and recorded in the deed records of Yamhill County a "Declaration of Restrictions, Covenants and Conditions" which among many other things prohibited the cutting of any living tree six inches or more in diameter except for domestic purposes. The restrictive covenants ran with the land and could only be rescinded or amended by vote of three-fourths of the owners.

[4] The Eagle Point Ranch contains a total of approximately 335 acres and is divided into 67 tracts of an average size of five acres. The Meadow View Estates has approximately 45 tracts ranging in area from 2.4 acres to 17.8 acres.

[5] The record in this case as to background information is both scant and confusing. Apparently, between 1969 and 1972, Hemstreet submitted three separate but adjoining "subdivisions" or "partitions" for approval. The record does not show that they were given separate names or numbers by Hemstreet. They were referred to by Yamhill County by date—1969, 1970, and 1972. As far as we can tell, the overall original project was known as the Eagle Point Ranch. This conclusion is supported by an undated map in the record. There are references in the record to the "front" and the "back" of the Eagle Point Ranch—the "front" meaning the approved subdivision and the "back" meaning the unapproved parts. In March, 1978, the owners of the tracts in the 1972 approved subdivision formed the Meadow View Homeowners Association. For the purposes of this case, we will refer to the "unapproved" or "questionable" subdivisions as the Eagle Point Ranch, and the approved 1972 subdivision as the Meadow View Estates. This is the distinction most commonly used in the record.

In the 1970's, Yamhill County issued to the various owners of tracts in the Eagle Point Ranch building and septic tank permits. William Long, whose tract is in question here, received a permit and installed a septic tank in 1977.

The Eagle Point Ranch was first zoned in February, 1976 as AF-20(Agriculture/Forestry-20 acre minimum parcel size). Through the exception process, it was rezoned in April, 1980 to F-40 (Forestry-40 acre minimum parcel size).[6] The Meadow View Estates was zoned VLDR-5 (Very Low Density Residential - maximum residential density of one dwelling unit per five acres).

The Yamhill County zoning ordinance for a F-40 zone provides for a minimum lot size of 40 acres and allows a single family dwelling only as a conditional use. In May and June, 1980, Ingram and Long, respectively, applied to the County Planning Commission for conditional use permits to allow the construction of single family dwellings and variances to reduce the minimum lot size to 4.7 acres and 5 acres. The Planning Commission approved the applications and the Meadow View Estates Homeowners Association appealed to the Yamhill County Commissioners.

Ingram and Long took the position before the County Commissioners that it was necessary to have the conditional use permits and the variances to make any beneficial use of their property. They pointed out that on one hand the primary permitted use under the zoning ordinance was commercial forestry while on the other hand the covenants running with their land prevented the cutting of trees above six inches in diameter. This reduced them to paying taxes for the privilege of looking at and walking upon their land. Long testified that he had been denied a timber tax deferral. He also complained that the county had taken inconsistent positions by first allowing him a septic tank permit and then zoning the property as commercial forest. Ingram testified that in his opinion, 95 percent

---

[6] One of Yamhill County's officers testified:

"By zoning it F-40 we put a red flag to developers and realtors that there were development problems up there and they could not continue to convey this land until the matter got straightened out."

of the timber on his tract was oak and that he could not cut it to replant the land to fir because of the restrictive covenant.

Although the Meadow View Homeowners Association claims that the Ingram and Long applications do not meet the requirements of the county's ordinances for conditional use permits and variances, its basic premise is a concern for the probable increased use of the public road that runs through its subdivision to the Eagle Point Ranch. The homeowners association claims that if the permits are issued to Ingram and Long, then the door is open and a precedent is set for the owners of the other 65 tracts in the Eagle Point Ranch to apply for similar permits.[7] The net effect would be to overburden the road which, although public, has been privately maintained by the Meadow View people. The homeowners association also contends that in effect the county is rezoning the Eagle Point Ranch without going through a rezoning procedure.

The Planning Department of Yamhill County reported to the commissioners that its chief concerns with the Eagle Point Ranch were the roads, boundaries of the individual tracts, and structures that had been previously built without permits. A report from the office engineer of the county road department dated in June, 1980 says that the road system is in extremely poor condition and does "not even meet the emergency vehicle standards for private roads." The report further states:

> "The roads as shown in our Assessor's map do not agree with their location on the ground. One narrow pathway designated a hiking and horse path is actually a roadway and some roads shown have never been opened at all due to extremely adverse grades."

[7] On August 21, 1980, the Yamhill County Planning Commission adopted a resolution which in part reads:

"Whereas, the above docket items [Ingram and Long applications] were approved as a gesture of good faith on the part of the County and does not represent a policy on the part of the Planning Commission to approve subsequent applications * * *.

"IT IS HEREBY RESOLVED * * * that the Director * * * hereby is instructed to no longer accept individual applications for land use actions * * * until such time as * * * the Eagle Point Homeowners Association has taken substantial steps toward solving the problems with said partitioning * * *."

The report concludes that the lot lines are extremely difficult to locate and that a complete resurvey of the entire development should be made.

On October 8, 1980, the Yamhill County Commissioners issued conditional use permits and variances to Ingram and Long to allow the construction of single family dwellings on their respective tracts upon conditions not relevant to this review.

Ludwick and Moorhead appealed the Yamhill County Commissioner's orders to LUBA. The appeals were consolidated by LUBA. Yamhill County moved to dismiss the appeals on the grounds that Ludwick and Moorhead lacked standing because they were not adversely "affected or aggrieved" as a result of the county's decisions. After an evidentiary hearing, LUBA denied the motion. The battle before LUBA continued except that for practical purposes the contestants in the ring were different—Ludwick and Moorhead had replaced the Meadow View Homeowners Association and Yamhill County had replaced Ingram and Long.

LUBA found that the county's decisions were in error because it was not shown by substantial evidence that the tracts were "existing legal lots of record" — a condition required by ordinance to the granting of a conditional use permit.[8] It was the county's turn to appeal and it did so to the Court of Appeals.

The Court of Appeals reversed LUBA. It found that the phrase in the ordinance "existing legal lot of record" refers to a legally *recorded* conveyance of a sub-size

---

[8] LUBA also reversed Yamhill County on the grounds that restrictive covenants between private parties can not be the basis for findings supporting the variances because the covenants are not a "hardship" when they are commonly shared, self-imposed and not peculiar to the individual tracts.

The Court of Appeals in reversing LUBA found that neither LUBA's order nor Ludwick and Moorhead's arguments suggested "that the ordinance variance standards were misapplied in connection with the reduction in minimum lot size."

Ludwick and Moorhead in their petition for review in this court alleged that the Court of Appeals had erroneously failed to address LUBA's finding that the county had violated the standards in its variance ordinance.

As we previously noted in the text of this opinion we do not reach the variance issue.

parcel which existed prior to the creation of the F-40 zone and does not "affect the status of an innocent purchaser's interest in property."

Ludwick and Moorhead in their petition for review in this court alleged that the Court of Appeals erroneously determined that lots from illegally created subdidvisions are "legal lots of record" once they are recorded and conveyed.

Before considering the issue raised by the petition for review we must address the standing issue.

Yamhill County moved to dismiss Ludwick and Moorhead's appeal to LUBA for lack of standing. After an evidentiary hearing, LUBA denied the motion. On appeal to the Court of Appeals, Yamhill County alleged as one of its assignments of error that LUBA's determination that Ludwick and Moorhead had standing was not supported by substantial evidence. Because of the result reached by the Court of Appeals, it did not consider the assignment of error. As our result is different, we must consider the assignment.

■       Yamhill County questioned Ludwick and Moorhead's standing to appeal to LUBA on the sole grounds that they were not persons whose interests were adversely affected or who were aggrieved by the decisions of the county.[9]

After the hearing at which Ludwick, Moorhead and the county's senior planner testified, LUBA entered an order in which it found: (1) The single road serving the tracts in question was maintained solely by the homeowners association to which Ludwick and Moorhead belonged and that when the traffic on the road increases, so does the cost of maintenance, and (2) Ludwick's school-age children presently, and Moorhead's school-age children in the future, walk or will walk the road to gain access to the

---

[9] Oregon Law 1979, ch 772, § 4(3) provides:

"Any person who has filed a notice of intent to appeal * * * may petition the board for a review of a quasi-judicial land use decision if the person:
* * *

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

school bus, and because the road is unimproved, narrow and contains many blindspots, the children will be exposed to great danger.

We are of the opinion that the findings by LUBA are supported by substantial evidence and Ludwick and Moorhead are persons who were adversely affected and aggrieved by the county's decisions to grant the conditional use permits and variances. *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982).

Next, we consider the question of "existing legal lots of record." The precise issue is: Were the Ingram and Long tracts existing legal lots of record when they were rezoned commercial forest F-40 in April, 1980?

Section 10.330 of the Yamhill County zoning ordinance provides in part:

> "In the F-40 District, approval of a single-family dwelling * * * on *an existing legal lot-of-record* of less than forty (40) acres shall be subject to [specified procedures and conditions]." (Emphasis in original deleted; emphasis added.)

Throughout this entire litigation, all parties have agreed that the Ingram and Long tracts must qualify as "existing legal lots of record" in order to obtain conditional use permits for single family dwellings under ordinance 10.330, *supra.*

Yamhill County, in its brief in the Court of Appeals and on oral argument in this court, took the following position: The facts surrounding the creation of the Ingram and Long tracts are not in dispute. The tracts in question were included in a partitioning of 67 lots and were sold in 1972 without final partitioning approval by the county. When these tracts were carved out of the wilderness, the subdivider violated former ORS 92.016:

> "No person shall dispose of, transfer, sell or agree, offer or negotiate to sell any lot or parcel in any subdivision or division of land with respect to which approval is required by any ordinance or regulation adopted under ORS 92.046 and 92.048 until such approval is obtained."

The county also contends the crux of the matter is whether a transfer of the real property in violation of the above-quoted 1972 statute is void or voidable and if the legislature did not intend to invalidate or void the transfer of

these tracts when they were sold by the subdivider in 1972, then they are "existing legal lots of record."

Yamhill County concluded that the legislative intent behind Chapter 92 Oregon Revised Statutes was to protect innocent purchasers and that a violation of the act gives only the purchaser a right to void the transaction, citing *Kern v. Feller,* 70 Or 140, 140 P 735 (1914), *Seal v. Polehn,* 52 Or App 389, 628 P2d 746, *rev den* 291 Or 368 (1981).[10] To further bolster its position, the county argues that in 1975 the legislature amended ORS 92.012 to provide:

"No land may be subdivided or partitioned except in accordance with ORS 92.010 to 92.160."

Therefore, the county contends by "changing the prohibition in 1975 to speak to the land as opposed to the seller, it would appear that the legislature prior to 1975 recognized that the prohibition did not void a transfer made in contravention of it."[11]

Ludwick and Moorhead counter Yamhill County by taking the following position: The Ingram and Long tracts must be tested against some law to determine if they are "existing legal lots of record." In this case the only applicable laws are ORS 92.016, *supra,* and Yamhill County's own ordinances which prohibit the subdivision of land without prior county approval. The Court of Appeals was wrong in concluding that ORS 92.016 was irrelevant and that

---

[10] Yamhill County also cites the following cases from other jurisdictions: *Keizer v. Adams,* 2 Cal3d 976, 88 Cal Rptr 183, 471 P2d 983 (1970); *Bd. of County Com'rs of Pitkin County v. Pfeifer,* 190 Colo 275, 546 P2d 946 (1976); *Sharp v. Richardson,* 353 Mo 138, 182 SW2d 151 (1944); *Financial Services v. Capitol Funds,* 288 NC 122, 217 SE2d 551, 77 ALR 3d 1036 (1975); *State ex rel Craven v. Tacoma,* 63 Wash 23, 385 P2d 372 (1963).

*See also* annotation: *Failure of vendor to comply with statute or ordinance requiring approval or recording of plat prior to conveyance of property as rendering sale void or voidable.* 77 ALR 3d 1058 (1977).

[11] Yamhill County has shifted its positions since this matter was at the county level. The Board of County Commissioners entered a finding that the Ingram lot "is a lawful lot of record" under a ratification theory. This was based upon a previous finding that the county had approved the 1969 partitioning by issuing building and subsurface sewage permits. The board found that the Long lot "is a lawful lot of record" because it was a part of the 1970 partition which was approved upon a condition subsequent that the roads be upgraded and that the county had not taken affirmative action to revoke the approval. Yamhill County has not urged these positions in this court or in its brief in the Court of Appeals.

ordinance 10.330 referred to a "legally *recorded* conveyance" and the status of an innocent purchaser's interest was not affected. The petition for review states:

> "The legal issue before the [Court of Appeals] was not the purchaser's *property interest* for purposes of a remedy under *contract law,* but the legality of the *lot,* itself, for purposes of *land use planning.*" (Emphasis in original.)

Petitioners also contend lots created through an unauthorized subdivision in violation of state law and local zoning ordinances are not "legal lots of record" and to hold otherwise would evade the requirement that Yamhill County review and approve all subdivisions since conveying and recording a subdivision lot would make it "legal."

■ We agree with Ludwick and Moorhead the tracts or lots in question were created as parts of unauthorized subdivisions and were not and have not become "existing legal lots of record." Therefore, we hold the lots do not qualify for conditional use permits and variances and Yamhill County was in error in granting the applications.

In *Robinson v. Lintz,* 101 Ariz 448, 420 P2d 923, 927 (1966), the Arizona Supreme Court considered the term "legally established" lot:

> "It is generally recognized that the act of recording one's subdivision plat legally establishes each lot therein as to size and description. *American Community Builders v. City of Chicago Heights,* 337 Ill App 263, 85 NE2d 837. *Northern Indiana Public Service Co. v. McCoy,* 239 Ind 301, 157 NE2d 181. And *see Kirchin v. Remenga,* 291 Mich 94, 288 NW 344, In the *McCoy* case the court said:
>
> > " 'Until the plat is recorded as provided by statute, a prospective purchaser has no assurance that a subdivision will ever be established, and the lots and streets shown thereon are nothing more than lines on paper. The act of recording brings the subdivision into being and makes of it a reality instead of a mere outline on paper of a tentative proposal of the subdivider.' 157 NE 2d 181, 184.
>
> "Also until the plat has been recorded there can be no assurance that there will not be a change in the size of the lots, layout of streets and alleys, restrictions and dedication, if any, or the use and purpose of the subdividing.

"We find that, in the absence of any express statutory requirements, as soon as the plat is properly recorded, the lots therein become 'legally established' within the meaning of both the zoning ordinance and common understanding." (Footnote omitted.)

Although the focus in the *Robinson* case, *supra,* was on the recording of the plat and here the parties have talked only in terms of approval of the subdivisions, the reasoning is the same. The statutes in force at the time Hemstreet sold the tracts in question clearly required that the subdivision be approved and the plat be recorded before any lots could be sold. ORS 92.016, 92.025. If Hemstreet had received county approval and recorded the plats of the subdivisions then the tracts in question would have become "legally established lots" as in *Robinson* and "existing legal lots of record" under the Yamhill County ordinances.

We do not know the "legislative intent" of Yamhill County when it adopted ordinance 10.330 requiring that there be an "existing legal lot of record" as a condition precedent to the granting of a conditional use permit on a tract of less than 40 acres in an F-40 zone. However, it seems logical that it had in mind some of the same things discussed by the Arizona court in *Robinson, supra.* It may have been concerned with the size of the lots and the layout of the roads. It may have had the foresight to attempt to prevent the very things that have come to pass as described in the roadmaster's report—platted roads with extremely adverse grades and platted lot lines difficult to locate on the ground. Surely it was the original desire of Yamhill County to resolve such problems on the plat and subdivision approval rather than at a later date on a hearing for a conditional use permit and a variance.[12]

Yamhill County claims that the crux of this case is whether Hemstreet's sale of the lots in 1972 in violation of former ORS 92.016 was void or voidable. It contends that the sale was voidable and could only be set aside at the

---

[12] It is interesting to note that the undated map of the Eagle Point Ranch which is in the record shows the names of roads but does not contain the width, distances or courses of the same roads. The map shows lot numbers for the various tracts but does not have any recording data. The orders issued by Yamhill County approving the applications of Ingram and Long for the conditional use permits and variances describe the tracts by tax lot number rather than legal description.

option of purchasers. It concludes that because the predecessors in interest of Ingram and Long did not declare the sales void, the lots are "existing legal lots of record."

■     In 1972 when Hemstreet sold these tracts, former ORS 92.016 provided that *no person* shall sell any lot in a subdivision without approval. In 1975, the legislature amended ORS 92.012 to provide that *no land* may be subdivided except with approval. Yamhill County argues that the 1975 legislature by amending the law must have recognized that the prior "prohibition did not void a transfer made in contravention of" ORS 92.016.

Our research shows the following digest of the testimony of the legislative counsel on May 31, 1975, before the House State and Federal Affairs Committee:

> "The law is set up to say presently that no *person* shall subdivide. If the land is subdivided into three and distributed among various people they in turn can for the first time as individuals subdivide their piece of property again. To alleviate this, the amendments state that no *land* shall be subdivided. This gives the county a better handle on partitions and subdivisions within its jurisdiction." (Emphasis added.)

Thus it is evident that the legislature by the 1975 amendment was not concerned with whether a sale in contravention of the statute was "void" or "voidable" in a contract sense, but wanted to curb subsequent sub-dividing by the first purchaser.

In any event, this case does not turn upon whether the sales by Hemstreet in 1972 in violation of former ORS 92.016 were void or voidable under contract law. Yamhill County is talking about the property interest of the purchaser for the purposes of remedy under the law of contracts. Here we are dealing only with the legal status of the lots for the purposes of land use planning.

The decision of Court of Appeals is reversed and this matter is remanded to LUBA for disposition consistent with this opinion.

APPENDIX A

Eagle Point Ranch & Meadow View Estates -- Yamhill County, Oregon