Argued and submitted July 25, 1995, affirmed March 6, petition for review denied
May 7, 1996 (323 Or 264)

## 1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

## LAND CONSERVATION AND
## DEVELOPMENT COMMISSION,
*Respondent,*

*and*

## YAMHILL COUNTY,
*Intervenor.*

(94-Remand-931; CA A85351)

912 P2d 919

F. Blair Batson argued the cause and filed the brief for petitioner.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John C. Pinkstaff, Assistant County Counsel, argued the cause for intervenor. With him on the brief was John M. Gray, Jr., Yamhill County Counsel.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner seeks review of LCDC's periodic review order for Yamhill County. It contends that LCDC erred by concluding that the county's minimum parcel size requirements that permit parcels of fewer than 80 acres to be created in certain mixed agricultural/forestry (AF) zones comply with Goal 4 and OAR 660-06-026, a provision of the Goal 4 implementing rule.[1] We affirm.

The dispute focuses on OAR 660-06-026(1), which provides:

"Governing bodies shall legislatively amend their land division standards to incorporate one or more of the following parcel sizes. Under these provisions, a governing body may not determine minimum parcel sizes for forest land on a case-by-case basis:

"(a)   An 80-acre or larger minimum parcel size; or

"(b)   One or more numeric minimum parcel sizes less than 80 acres provided that each parcel size is large enough to ensure:

"(A)   The opportunity for economically efficient forest operations typically occurring in the area; and

"(B)   The opportunity for the continuous growing and harvesting of forest tree species; and

"(C)   The conservation of other values found on forest lands as described in Goal 4;

"(D)   That parcel[s] meet the requirements of ORS 527.630."

The land use legislation that the county submitted for review contains various mixed zones with respective minimum parcel sizes of 20, 40 and 80 acres. For the zones that require less than an 80-acre minimum, the county relied mainly if not entirely on tax lot maps showing the size, ownership and tax status of properties in the affected areas. As summarized in the report to LCDC by the director of the Department of Land Conservation and Development, the data showed that the "overwhelming majority of the tracts in

---

[1] We have previously considered LCDC orders relating to the periodic review for Yamhill County in *Yamhill County v. LCDC*, 115 Or App 468, 839 P2d 238 (1992), and *Oregonians in Action v. LCDC*, 121 Or App 497, 854 P2d 1010, *rev den* 318 Or 170 (1993).

the AF zone are already less than 40 acres and receive forest tax deferral." Petitioner contends generally that the county's establishment of the smaller minimum parcel sizes and the approach that it followed in doing so violate OAR 660-16-026(1)(b)(A) and, derivatively, Goal 4 and the statutes that are implicated by the rule. Petitioner makes a number of specific arguments, but only two require discussion.

■        First, petitioner asserts that LCDC erred by approving the county's use of the tax lot data as the basis for its creation of the 20- and 40-acre minimum parcel size zones. Petitioner casts its argument in terms of "substantial evidence," and contends that the evidence cannot support a finding that the 20- and 40-acre parcel sizes assure "the opportunity for economically efficient forest operations typically occurring in the area." Petitioner relies, *inter alia*, on *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 752 P2d 271 (1988). The Supreme Court concluded in that case that Lane County's selection of minimum farm parcel sizes on the basis of a tax lot survey was inadequate to support the county's decisions or LCDC's approval of them. The court noted that "LCDC did not find that tax lots represent actual farms," and

> "[b]ecause there is no certain connection between tax lot size and actual farm size in the record, LCDC was incorrect when it assumed that using tax lots would ensure that actual farm uses are preserved."

305 Or at 407.

LCDC argues in its brief that the evidence here bears no similarity to the evidence in *Lane Co.*, beyond their common generic label. LCDC explains:

> "The county's and the commission's reliance on tax lot information was not confined to tracing lines on a map. The information used identified land ownerships and whether the ownerships were receiving a preferential tax assessment based on forest use. Qualification for the special tax status is important. Under ORS 321.358, a county assessor must find land is held or used 'for the predominant purpose of growing and harvesting trees of marketable species.' In addition, the property must satisfy the minimum stocking and acreage requirements established by the State Board of Forestry under the Oregon Forest Practices Act, ORS 527.710; OAR

629-24-502. In place of properly stocked land, the landowner may qualify for the preferential tax treatment with a restocking plan. A restocking plan specifies location, acreage, ground cover, present stocking, slope and other information relevant to growing trees on the site. OAR 150-321-358(2)(3). An assessor's finding that the land qualifies for preferential property tax treatment under ORS 321.358 quite firmly establishes that the property is and will be used for forest purposes consistent with the rule."

In other words, according to the argument, the data that necessarily underlie the tax lot evidence in this case demonstrate the connection between the tax lot size patterns and the resource usage that was lacking in *Lane Co.* To be included in the evidentiary sample, lots had to be used predominantly for commercial forestry. We cannot say that "a reasonable person could [not] have made the finding" that LCDC did on the basis of that evidence, viewed in the record as a whole. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).

■   The second argument that we address is related but broader, and goes to the question of *what* has to be established to satisfy OAR 660-06-026(1)(b)(A), as distinct from *how* it may be proven. Petitioner emphasizes the phrase "economically efficient forest operations" in the rule, and contends that the approach that the rule requires, and that the county and LCDC did not follow, should be:

> "The standard for land divisions in OAR 660-06-026-(1)(b)(A), like Goal 4 itself, is management oriented. In order to meet it, there must be an identification of the existing forest operations occurring in an area, along with a description of which ones are being managed on an economically efficient basis. Once an area's economically efficient forest operations are identified, their size can be determined. This basic information is necessary to analyze whether parcels smaller than 80 acres are large enough to ensure the opportunity for economically efficient operations in a given area."

LCDC gives more emphasis than petitioner does to the rule's words "typically occurring in the area." It argues that "lot sizes that preserve the existing pattern satisfy the rule by permitting continuation of whatever opportunities

for forest industry typically exist in the area." LCDC maintains that nothing in the rule's language supports the approach that petitioner describes, of "auditing" and making lot size decisions on the basis of the performance efficiency of particular forestry operations. LCDC also notes that "it is important to remember that [LCDC's] decision is based on its interpretation of its own rule," which is entitled to deference. *Martin v. Dept. of Transportation*, 122 Or App 271, 275, 857 P2d 225 (1993).[2]

We agree, at least with LCDC's last point. The language of the rule can support either the maximization approach that petitioner urges or the maintenance approach that LCDC followed. Accordingly, LCDC's view of the meaning and application of its rule prevails.

Affirmed.

---

[2] Petitioner does not contend — nor do we suggest — that the *rule* is inconsistent with Goal 4 or with any statute.