Argued and submitted May 6, affirmed June 24, 2009

FRIENDS OF YAMHILL COUNTY,
Merilyn Reeves,
and Jim Ludwick,
*Respondents,*

*v.*

YAMHILL COUNTY,
*Respondent,*

*and*

Charma VAAGE,
*Petitioner.*

Land Use Board of Appeals
2008196; A141390

211 P3d 297

Dorothy S. Cofield argued the cause and filed the brief for petitioner.

Marianne Dugan argued the cause and filed the brief for respondents Friends of Yamhill County, Merilyn Reeves, and Jim Ludwick.

No appearance for respondent Yamhill County.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Petitioner seeks judicial review of a final opinion and order of the Land Use Board of Appeals (LUBA) reversing a Yamhill County decision approving petitioner's application for a forest template dwelling. We affirm.

Petitioner owns a 5.5-acre piece of property in Yamhill County that is zoned commercial forestry. The property is part of what the parties refer to as the "Eagle Point Ranch" subdivision, which consists of 67 tracts of land, each with an average size of approximately five acres. The lots have never received final subdivision approval from the county. Still, the original developer sold the tracts, in violation of the law. *See Yamhill County v. Ludwick*, 294 Or 778, 786, 663 P2d 398 (1983) (holding that the lots were transferred in violation of the relevant statute).

Petitioner applied for a forest template dwelling, that is, she applied for permission to build a dwelling on her tract, in spite of its commercial forestry zoning. ORS 215.750(1)(c) provides that the governing body of a county may approve the construction of a single-family dwelling within a forest zone if, among other things, "[a]ll or part of at least 11 other lots or parcels that existed on January 1, 1993, are within a 160-acre square centered on the center of the subject tract." Petitioner contended that her tract satisfied that requirement. Friends of Yamhill County and two county residents (Friends) objected to the application on the ground that petitioner had not satisfied the statute, because the "parcels" that petitioner was counting to satisfy that statute had not been lawfully created. Petitioner contended that the statute does not require that the parcels have been lawfully created. The county agreed with petitioner and approved the application.

Friends appealed to LUBA, and LUBA reversed. LUBA noted that ORS 215.010(1)(a) expressly defines the term "parcel" for the purposes of ORS chapter 215 to mean a unit of land created

"(A) By partitioning land as defined in ORS 92.010;

"(B) In compliance with all applicable planning, zoning and partitioning ordinances and regulations; or

"(C)   By deed or land sales contract, if there were no applicable planning, zoning or partitioning ordinances or regulations."

According to LUBA, that statute

"makes clear that when the word 'parcel' is used in ORS Chapter 215, it has the meaning given in the statute. The definition makes clear that in order for a unit of land to be a 'parcel,' it must have been created in compliance with applicable partitioning laws or created before any partitioning laws were in place. In other words, it must have been 'lawfully established.' "

*Friends of Yamhill County v. Yamhill County*, 58 Or LUBA 315, 319 (2009). LUBA noted that the statute does not define the term "lot," but other provisions in the state's land use statutes make clear that the term is synonymous with the term "parcel." *Id.* at 321 (citing ORS 92.010(4) and (6), which define "lot" and "parcel" in nearly identical terms). In this case, LUBA noted, petitioner cannot satisfy the requirements of the statute without counting illegally created lots or parcels. It follows, LUBA concluded, that the county erred in approving the forest template dwelling application. *Id.* at 322.

On review, petitioner contends that LUBA erred in "inserting a 'legal' lot and parcel requirement for a template dwelling under ORS 215.750(1)(c) when no such threshold requirement is in the template dwelling statute or its applicable legislation." According to petitioner, all that the statute requires is that a certain number of parcels—whether or not lawfully created—existed as of January 1, 1993. Petitioner advances no argument concerning LUBA's construction of the term "lots" as it is used in ORS 215.750(1)(c).

Friends responds that LUBA did not err in construing the forest template dwelling statute. According to Friends, by its very terms, the definition of "parcel" in ORS 215.010(1)—which includes the requirement that the units of land have been lawfully created—applies to that statute.

The parties' contentions present to us an issue of statutory construction, resolved by application of the principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). That is, we attempt to determine the meaning of the statute most likely intended by the legislature, examining the text in context along with any legislative history offered by the parties and, if necessary, relevant canons of construction. *Gaines*, 346 Or at 171-72.

We begin with the text of the statute. What is known as the forest template dwelling statute is part of a group of statutes, ORS 215.700 to 215.783, that addresses the extent to which owners of forestland may construct dwellings on that land.

Those statutes authorize, subject to various conditions and approval criteria, the construction of lot-of-record dwellings, ORS 215.705; large-tract dwellings, ORS 215.740; alternative, or "template," dwellings, ORS 215.750; replacement dwellings, ORS 215.755(1); and temporary hardship dwellings, ORS 215.755(2).

At issue in this case is the statute that authorizes the approval of forest template dwellings. That statute, as we have noted, provides that the governing body of a county may approve the construction of a single-family dwelling within a forest zone if, among other things, "[a]ll or part of at least 11 other lots or parcels that existed on January 1, 1993, are within a 160-acre square centered on the center of the subject tract." ORS 215.750(1)(c). (The 160-acre square is regarded as the "template" that is placed over a map of the area to determine whether there are sufficient lots and parcels; hence, the term "template dwelling.") That particular statute does not define what constitutes a "parcel."

ORS 215.010(1) does, however. And it expressly provides that the term "parcel" includes units of land either created by partitioning pursuant to statute, or "[i]n compliance with all applicable planning, zoning and partitioning ordinances and regulations," or by deed or contract, if no such ordinances or regulations were applicable. Moreover, the definition expressly applies to "this chapter," that is, ORS chapter 215.

■■ We note that the statutory definition is phrased in terms of what a "parcel" *includes*, not what it *means*. Although petitioner does not make the argument, it could be asserted that the legislature, by merely stating what the term includes, has not foreclosed the courts from determining that it means units of land without regard to whether they were lawfully created. The argument is untenable for at least two reasons, however. To begin with, under the principle of *ejusdem generis*, when a court confronts the question whether an open-ended statutory list includes something not expressly listed, the court is limited by the common characteristics of those things already in the list. As we explained in *Schmidt v. Archdiocese of Portland in Oregon*, 218 Or App 661, 683, 180 P3d 160, *rev allowed*, 345 Or 381 (2008), the rule applies when a statute "sets out a nonexclusive list of activities that the term 'includes.' In that circumstance, we construe the statute to refer only to conduct of the same type as the listed activities." In this case, ORS 215.010(1) lists three types of units of land in its definition of "parcel," and each of them is a unit that was created pursuant to applicable law. Units of land not lawfully created are not "the same type as the listed activities." *Schmidt*, 218 Or App at 683. Aside from that, to construe "parcel" to include units of land not lawfully created renders the definition in ORS 215.010(1) superfluous; if the term includes parcels not lawfully created, then there is no point in the legislature providing that it includes parcels that are lawfully created. *See State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage.").

Petitioner acknowledges that ORS 215.010(1) purports to define the term "parcel" to include a requirement of lawful creation. She nevertheless insists that the legislature did not intend that definition to apply to ORS 215.750 for essentially three reasons. First, she contends that one of the other forest dwelling statutes, ORS 215.705, expressly requires that the parcel on which the dwelling is to be placed have been "lawfully created." That, she contends, permits the inference that the omission of such a phrase in ORS 215.750 was intentional. Second, she contends that the legislative

history demonstrates that the legislature did not intend to require that, to qualify for forest template dwelling purposes, a lot or parcel have been lawfully created. Third, she contends, our own case law confirms her reading of the statute.

We conclude that none of petitioner's arguments is availing. We begin with petitioner's reliance on ORS 215.705. Petitioner is correct that the statute refers to "lawfully created" parcels. Specifically, ORS 215.705(1) provides that a county may allow the construction of a single-family dwelling on a lot or parcel located in a farm or forest zone if, among other things, "[t]he lot or parcel on which the dwelling will be sited was lawfully created" and was acquired by the current owner before January 1, 1985. Given the fact that ORS 215.010(1) already defines "parcel" to refer to units of land that were lawfully created, petitioner has a point that the inclusion of the term "lawfully created" is redundant.

That said, the existence of such a possible redundancy does not necessarily support the conclusion that petitioner draws from it. If petitioner is correct that the inclusion of the words "lawfully created" in ORS 215.705(1) implies that no such requirement exists where those words do not appear—for example, in ORS 215.750(1)—then the necessary consequence is that the definition in ORS 215.010(1) thereby becomes meaningless.

Thus, under LUBA's reading of ORS 215.750(1) in this case, the words "lawfully created" in a related statute are indeed redundant. But, under petitioner's reading of the statute, so also is the definition of "parcel" in ORS 215.010(1). Indeed, under petitioner's reading, the definition does not mean what it plainly says, *viz.*, that, as used in ORS chapter 215, the word "parcel" means a unit of land that was lawfully created as such. According to petitioner, the word "parcel" does not mean that unless the words "lawfully created" are included in the operative provisions of the statute. In other words, in petitioner's view, the word "parcel" does not mean what ORS 215.010(1) plainly says it means.

■■ We are faced, then, with the somewhat awkward choice between an interpretation that suggests that the legislature was perhaps redundant, on the one hand, or that the

legislature was simply incorrect, on the other. When confronted with such a choice, the courts of this state routinely select the former interpretation. *See, e.g., S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630-31, 872 P2d 1 (1994) (when faced with the choice of an interpretation that renders other enactments redundant and an interpretation that requires the court to omit what the legislature has inserted into a statute, court chooses the former). That is because, in both ordinary day-to-day communication and in legal drafting, redundancy is a fairly common phenomenon. *See The New Fowler's Modern English Usage* 661 (R. W. Burchfield ed. 1996) ("Actual or concealed redundancy occurs with great frequency in the language."); *see also Riley Hill General Contractor v. Tandy Corp*, 303 Or 390, 396-97, 737 P2d 595 (1987) (noting that legal terminology often is redundant, "sometimes for clarity, sometimes for emphasis"). And it is less offensive to legislative prerogative to hold that the legislature simply said too much rather than that it did not mean what it plainly said. *Stamper*, 197 Or App at 427.

We turn to petitioner's reliance on the legislative history of ORS 215.750(1). She relies, in particular, on a single statement of a single legislator who offered an "overview" of the bill of which the forest template dwelling statute was a part:

> "This bill is really about fairness and equity and, at the same time, about protecting our good farmland. The key word in this bill is 'balance.' It was hard to achieve; it made for a complicated bill because fairness in a complicated area sometimes means complex solutions. But it includes all of those elements. For the very first time in land use planning, there is at least one type of application where you can go to the county planning office and, at the counter—yes, you may need some charts, you may need a template, but right there—you will get your answer, you will know how that answer was devised, and that kind of objective criteria is a giant step forward in this arena."

Tape Recording, House Floor Proceedings, HB 3661, Aug 3, 1993, Tape 230, Side A (statement of Rep Marilyn Dell). According to petitioner, the foregoing quotation "demonstrates a legislative intent not to require a legal lot of record threshold test" because the statute was intended to establish

an application process that could occur "at the land use planning counter."

We are not persuaded. To begin with, the statement is of a single legislator, *see, e.g., Gaines*, 346 Or at 172-73 n 9 (cautioning against reliance on statements of a single legislator), who spoke not to the particulars of the forest template dwelling statute, but to the broader purposes of the bill of which the forest template dwelling statute was a part. The statement, in fact, does not mention that specific statute (although it does mention the word "template"), the intended meaning of the word "parcel," or whether the legislature intended that word to mean what ORS 215.010(1) already defined it to mean. Aside from that, petitioner's reasoning is entirely dependent on an unproven assumption, namely, that the lawfulness of the creation of a given parcel is information that would not be readily available "at the land use planning counter."

That leaves petitioner's reliance on this court's case law, which she argues supports her contention that the definition supplied by ORS 215.010(1) does not apply to the forest template dwelling statute. Petitioner relies on three decisions, in particular, for that contention.

Petitioner first cites *Citizens for Responsibility v. Lane County*, 207 Or App 500, 142 P3d 486 (2006), *rev den*, 342 Or 344 (2007), which she argues is "remarkably similar to the case on appeal." At issue in that case was the meaning and applicability of ORS 197.770, which provides that "[a]ny firearms training facility in existence on September 9, 1995, shall be allowed to continue operating until such time as the facility is no longer used as a firearms training facility." *Id.* at 503, 503 n 1. Lane County approved a special use permit for a firearms training facility that had been in operation since the mid-1950s. *Id.* at 504. LUBA remanded the approval on the ground that it had not been determined that the firearms training facility had been *lawfully* in operation since 1995. *Id.* at 506-07. We reversed, noting that "[t]here is no language in ORS 197.770 that provides that the statute is intended to permit the continuation of only those firearm training facilities established in conformity with whatever

regulations existed prior to the effective date of the statute." *Id.* at 507.

The problem with petitioner's reliance on *Citizens for Responsibility* is the fact that, as we noted, the statute contained no language imposing the requirement that the use at issue have been lawfully authorized. In this case, in contrast, ORS 215.010(1) supplies precisely what was missing in *Citizens for Responsibility*. The decision simply does not support what petitioner claims from it.

Next, petitioner relies on *Maxwell v. Lane County*, 178 Or App 210, 35 P3d 1128 (2001), *adh'd to as modified on recons*, 179 Or App 409, 40 P3d 532 (2002). In that case, we addressed the question whether, in computing the average size and density of "parcels" for the purpose of deciding an application for rezoning under a county code, the parcels must have been lawfully created. *Id.* at 215. We concluded that, although the particular portion of the code at issue did not include that requirement, other "applicable legislation" made clear that only lawfully created parcels could be counted. *Id.* at 229-30. It strikes us that *Maxwell* is perfectly consistent with LUBA's construction in this case, in which it determined that, although ORS 215.750(1) does not itself say that parcels must have been lawfully created to count for forest template dwelling purposes, other "applicable legislation"—that is, the definition in ORS 215.010(1)—does. In arguing that *Maxwell* actually aids her case, petitioner insists that the definition in ORS 215.010(1) cannot be regarded as "applicable legislation," because of the foregoing arguments that we have already rejected concerning the failure to include the words "lawfully created" in the forest template dwelling statute and its legislative history.

Finally, petitioner contends that we determined, in *1000 Friends of Oregon v. LCDC*, 139 Or App 485, 912 P2d 919, *rev den*, 323 Or 264 (1996), that the term "parcel" does not require that units of land have been lawfully created. In that case, however, the issue was whether the county erred in using tax lot data as the basis for its creation of minimum parcel size zones. *Id.* at 488. We concluded that the question was essentially a factual one, concerning whether a reasonable person could rely on such data as the basis for a decision

concerning whether existing parcel sizes were adequate to assure economically efficient forest operations, as required by administrative rule. *Id.* at 488-89. There was no issue concerning the lawfulness of the creation of any parcels in that case. Neither ORS 215.010(1) nor ORS 215.750 was mentioned in the opinion.

■     We conclude, then, that the definition contained in ORS 215.010(1) applies and that, as a result, only parcels lawfully created may be counted in determining whether the requirements of the forest template dwelling statute have been met. LUBA, in other words, correctly construed the statute and did not err in reversing the county's approval of the forest template dwelling.

Affirmed.