***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted September 21, affirmed December 14, 2022

WINDLINX RANCH TRUST,
*Respondent,*

*v.*

DESCHUTES COUNTY,
*Respondent below,*
*Intervenor-Petitioner,*

*and*

Hodge KERR
and Debora Kerr,
*Petitioners.*

Land Use Board of Appeals
2022022; A179142

D. Adam Smith argued the cause for petitioners. Also on the brief were Sara Kobak, Tia Lewis, and Schwabe, Williamson & Wyatt, P.C.

Christopher P. Koback argued the cause for respondent. Also on the brief was Hathaway Larson LLP.

Stephanie Marshall for intervenor-petitioner joined the brief of petitioners.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Petitioners Hodge Kerr and Debora Kerr seek judicial review of a final opinion and order of the Land Use Board of Appeals (LUBA) that remanded, in part, Deschutes County's approval of a forest template dwelling.[1] In their sole assignment of error, petitioners contend that LUBA erred in holding that "Lot 6" did not qualify as a lawfully created parcel that counted for the minimum-parcel requirement for a forest template dwelling under ORS 215.750(2) (2005), *amended by* Or Laws 2019, ch 433, § 1.[2] We conclude that LUBA did not err, and, therefore, affirm.

We review LUBA's order to determine whether it is "unlawful in substance or procedure," ORS 197.850(9)(a), and we "may not substitute [our] judgment for that of [LUBA] as to any issue of fact," ORS 197.850(8). A LUBA order is unlawful in substance "if it represent[s] a mistaken interpretation of the appliable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001).

The Kerrs applied for a forest template dwelling, seeking permission to build a single-family dwelling on undeveloped land they own in Deschutes County that is zoned Forest Use (F-2). ORS 215.750(2)(b) provides that the governing body of a county may approve the construction of a single-family dwelling within a forest zone if, among other things, "[a]ll or part of at least seven other lots or parcels that existed on January 1, 1993, are within a 160-acre square centered on the center of the subject tract." The Kerrs contended that their tract satisfied that requirement. The application process included a public hearing. Respondent Windlinx Ranch Trust (Windlinx), which owns land adjacent to the Kerrs' land, participated in the process and

---

[1] Petitioners are joined in their brief by intervenor Deschutes County. For simplicity, our use of "petitioners" herein refers jointly to petitioners and intervenor. We use the name of the party when referring to a specific party.

[2] The Kerrs submitted their application for a forest template dwelling in August 2021. The language in subsection (2) of the 2005 version of the statute was not changed by the 2019 amendments—it was renumbered as subsection (3)—however, because the amendments to the statute apply in Deschutes County on and after November 1, 2021, we refer to the 2005 version of the statute. Or Laws 2019, ch 433, § 3.

submitted written materials. Windlinx asserted that not all of the lots relied on by the Kerrs were lawfully created and that there were fewer than seven lawfully created lots in the identified template area. The county, through a decision of a county hearings officer, approved the conditional use application with certain conditions. Windlinx appealed to LUBA, and LUBA remanded certain portions of the decision.[3]

The hearings officer's written decision acknowledges that Lot 6 has a complicated history. The Kerrs had asserted that Lot 6 is a legal lot because it is a "remainder parcel" created as part of the approval of a 1990 partition of land by Windlinx, in which Windlinx partitioned land into three separate parcels. The 1990 partition decision itself, among other things, refers to the creation of "two new 40-acre parcels," determines that "[a]ll three parcels are suited for the proposed uses," and requires the applicant to "show legal access to all three parcels from a legally dedicated public road." The alleged remainder parcel is an unidentified unit of land on the partition plat that Windlinx submitted to the county as part of the approval process for its partition. Ultimately, the hearings officer determined that "Lot 6 in its current configuration was lawfully created in 1990 and existed as of January 1, 1993[,] without further lawful alteration." The hearings officer also stated that "the only lawful processes affecting the size and configuration of Lot 6 were the original creation of the Kevar Patent in 1908 and the partition in 1990 that left Lot 6 as a remainder parcel.[4] Lot 6 in its current configuration, is therefore a lawfully created lot that can be used in the template analysis." That is, according to the hearings officer, Lot 6 was created as a result of the partition application that was filed by Windlinx and approved by the county in 1990, and, therefore, it could be counted as one of the required seven lawfully created lots.

---

[3] In a related appeal, *Windlinx Ranch Trust v. Deschutes County (A179127)*, 323 Or App 319 (2022) (nonprecedential memorandum opinion), also decided this date, Windlinx Ranch Trust seeks judicial review of the same final opinion and order of LUBA that is on review in this case.

[4] LUBA's order explains that "Lot 6 was originally part of a larger, 320-acre parcel conveyed by patent to Kever in 1908 (Kever Patent)."

As noted, Windlinx appealed to LUBA. LUBA's final opinion and order describes the arguments regarding Lot 6 and its conclusion:

"[Windlinx] argues that the hearings officer improperly relied on a portion of [Deschutes County Code (DCC)] 18.04.030 which provides that a remainder parcel that is left after a partition or subdivision can be a 'lot of record' but does not have any bearing on whether such a parcel is a lawfully created parcel ***. [Windlinx] points out that that portion of the definition of 'lot of record' at DCC 18.04.030 has no analog in the definition of 'parcel' at ORS 215.010(1)(a) or the definition of 'lawfully established unit of land' at ORS 92.010(3). According to [Windlinx], Lot 6 was not created '[b]y partitioning land as defined in ORS 92.010' or '[i]n compliance with all applicable planning, zoning and partitioning ordinances and regulations' because the property that composes Lot 6 was not included in the partition plat at all. [The Kerrs] respond that the hearings officer correctly concluded that the 1990 Partition created Lot 6 as a lawfully created remainder parcel.

"The issue presented here requires us to interpret ORS 215.010(1)(a), and it appears to be one of first impression. ORS 215.010(1)(a)(A) provides that, for the purposes of ORS chapter 215 and this appeal, 'parcel' includes a unit of land created '[b]y partitioning land as defined in ORS 92.010.' ORS 92.010(9) in turn defines 'partitioning land' to mean 'dividing land to create *not more than three parcels of land* within a calendar year.' (Emphasis added.) ORS 92.010(7) (1989), which was in effect when the 1990 Partition was approved, similarly provided that 'partition land' meant 'to divide land into *two or three parcels* of land within a calendar year.' (Emphasis added.) Therefore, in order to be approved in accordance with ORS 92.010(7) (1989), the 1990 Partition could create up to three parcels. The 1990 Partition created the three parcels that are shown on the approved partition plat. If the 1990 Partition created a fourth 'parcel,' the action would have qualified not as a partition but, rather, as a subdivision. *See* ORS 92.010(13) (1989) (defining 'subdivide land' to mean 'to divide land into four or more lots within a calendar year'). Accordingly, we conclude that Lot 6 was not created by 'partitioning land,'

and, accordingly, Lot 6 does not meet the definition of 'parcel' at ORS 215.010(1)(a)."[5]

On review before us, petitioners contend that LUBA erred in concluding that Lot 6 was not created by the 1990 partition because, in their view, LUBA's decision is an impermissible collateral attack on a prior land use approval. Petitioners argue that "LUBA re-examined the 1990 partition and determined that partition was not consistent with Oregon state law because it created four parcels, rather than the statutory limit of only 'two or three parcels' for a partition under *former* ORS 92.010(7) (1989)." Petitioners assert that LUBA's revisiting of the 1990 partition is contrary to the established rule of finality in land use proceedings.

Windlinx argues in response that petitioners mischaracterize LUBA's decision regarding Lot 6. According to Windlinx, LUBA never reviewed, challenged, or questioned the validity of the 1990 partition; rather, LUBA held that the 1990 partition created three parcels and that the 1990 partition did not create Lot 6. Therefore, contrary to petitioners' premise underlying their argument on review, LUBA's decision did not involve an attack on a prior final land use decision. As we explain below, we conclude that LUBA did not revisit a prior land use decision and did not err in its opinion.

"[O]nly parcels lawfully created may be counted in determining whether the requirements of the forest template dwelling statute have been met." *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 198, 211 P3d 297

---

[5] We note briefly what LUBA did not decide. LUBA noted that Windlinx had argued to the hearings officer that Lot 6 is not a lawfully created parcel for purposes of the template, because the owner of Lot 6, the High Desert Museum, has, in the past, included it as part of a single, large lot of record in other land use permit applications that the county had approved. The hearings officer rejected that argument, and Windlinx did not develop a challenge to the hearings officer's findings on that issue; therefore, LUBA did not decide that issue. In addition, LUBA noted that Windlinx had argued below that neither it nor its predecessor ever owned Lot 6 and that it was transferred to the museum by deed in 1982 from a separate entity not involved in these proceedings. In LUBA's view, if the evidence supported that contention, it would appear to support a conclusion that Windlinx's predecessor did not own Lot 6 when the 1990 partition was approved and recorded, and that if that is correct, then Lot 6 is not a remainder parcel from the 1990 partition. However, Windlinx did not raise that issue to LUBA and LUBA therefore did not consider it. We likewise do not consider those issues.

(2009). ORS 215.750 does not define "parcel"; however, the definition of "parcel" contained in ORS 215.010(1) applies. *Id.* Under ORS 215.010(1),[6] for purposes of ORS chapter 215, "parcel"

> "(a)   [i]ncludes a unit of land created:
>
> "(A)   By partitioning land as defined in ORS 92.010;
>
> "(B)   In compliance with all applicable planning, zoning and partitioning ordinances and regulations; or
>
> "(C)   By deed or land sales contract, if there were no applicable planning, zoning or partitioning ordinances or regulations."

Here the pertinent subparagraph is (1)(a)(A)—whether Lot 6 was created "[b]y partitioning land as defined in ORS 92.010."

As LUBA correctly stated, ORS 92.010(9) defines "partitioning land" as "dividing land to create not more than three parcels of land within a calendar year," with certain exclusions that are not relevant here, and ORS 92.010(16) defines "subdivide land" to mean "to divide land to create four or more lots within a calendar year." At the time of the 1990 partition, ORS 92.010(7) (1989) stated that to "partition land" meant "to divide land into two or three parcels of land within a calendar year,"[7] with exclusions not relevant here, and ORS 92.010(13) (1989) defined "subdivide land" as "to divide land into four or more lots within a calendar year." Under a plain reading of those statutory provisions, a division of land into three parcels would qualify as a partition of land and a division of land into four lots would meet the definition of a subdivision. LUBA applied that plain reading of the statute when it held that "[t]he 1990 Partition created the three parcels that are shown on the approved partition plat. If the 1990 Partition created a fourth 'parcel,' the action would have qualified not as a partition but, rather, as

---

[6] ORS 215.010 has been amended since the Kerrs filed their application; however, because those amendments do not affect our analysis, we refer to the current version of the statute.

[7] ORS 92.010 (1989), *amended by* Or Laws 1991, ch 763, § 1; Or Laws 1993, ch 702, § 1; Or Laws 1993, ch 704, § 4; Or Laws 1995, ch 382, § 3; Or Laws 1997, ch 268, § 1; Or Laws 2001, ch 544, § 3; Or Laws 2005, ch 399, § 1; Or Laws 2007, ch 652, § 1; Or Laws 2007, ch 866, § 4; Or Laws 2008, ch 12, § 3.

a subdivision." As we understand LUBA's final order, it did not revisit the 1990 partition or conclude that the partition was not consistent with Oregon law as petitioners assert. Rather, it concluded that the hearings officer's determination that the 1990 partition created *four* parcels was not correct under the law and therefore Lot 6 did not meet the definition of "parcel" under ORS 215.010(1)(a)(A). We conclude that LUBA correctly interpreted the applicable law, and, therefore, we affirm.

Affirmed.