Argued and submitted December 17, 2007, affirmed March 5, 2008

CITIZENS FOR RESPONSIBILITY,
Philip Ziebert, Adam Novick, and Maureen Hudson,
*Petitioners,*

*v.*

LANE COUNTY,
*Respondent.*

Land Use Board of Appeals
2005082; A135498

180 P3d 35

Daniel J. Stotter argued the cause for petitioners. With him on the brief was Irving & Stotter LLP.

Stephen Vorhes, Assistant County Counsel, Lane County Office of Legal Counsel, argued the cause for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

This is the second time we have reviewed a Land Use Board of Appeals decision concerning Lane County's approval of a special use permit to allow the Izaak Walton League to continue using its property as a gun club. In its decision that was the subject of our first review, *Citizens for Responsibility v. Lane County*, 207 Or App 500, 142 P3d 486 (2006), LUBA had remanded the case to the county for reconsideration of its approval of the league's conditional use permit. In remanding, LUBA based its decision on its interpretation of ORS 197.770. We concluded that, as a matter of law, LUBA erred in its interpretation of that statute. We remanded the case to LUBA to consider petitioners' remaining arguments. On remand, LUBA affirmed the county's approval of the league's special use permit, and this petition for judicial review followed. Petitioners now challenge LUBA's conclusions regarding the county's compliance with Lane Code (LC) 16.211(3).

We take the facts from our prior decision:

"The [l]eague has operated a gun club on the property, which consists of 17 acres, since the mid-1950s. The property was once zoned AGT (Agriculture, Grazing, Timber). That zone did not expressly allow shooting ranges but allowed authorization of such uses by means of a conditional use permit. In 1975, the [l]eague obtained a conditional use permit to facilitate the expansion of the facility, apparently to include a skeet shooting range. Subsequently, the property was rezoned 'F-2,' which, under the provisions of the county code for that zone, allows a firearms training facility 'that shall not significantly conflict with the existing uses on adjacent and nearby lands' under Lane Code (LC) 16.211(3)(c-c). Since the time of the rezoning, a number of changes have been made to the operation of the facility.

"The [l]eague applied for the permit at issue here in 2003. It asked for *post hoc* approval of modifications made to the facility after 1975. In its request, the [l]eague relied on the provisions of ORS 197.770 that allow firearms training facilities in existence on September 9, 1995, to continue until such time as the facility is no longer used as a firearms

training facility. The [l]eague asserted that the modifications made before the effective date of the statute would not need to be evaluated under LC 16.211(3)(c-c) to determine whether the uses 'significantly conflict with the existing uses on adjacent and nearby lands.' "

207 Or App at 504-05 (footnote omitted).

The county code at LC 16.211(3) allows certain "Special Uses" providing, among other criteria, that the proposed use "not significantly increase fire hazard or significantly increase fire suppression costs or significantly increase risks to fire suppression personnel." LUBA considered the hearings officer's finding, which included:

"The appellants have pointed to the isolated nature of the applicant's firearms training facility, the limited access to fire vehicles and the concern over near-drought conditions experienced generally in the area. However, there has not been a documented fire caused by or emanating from the facility, and I do not believe that a significant increase in fire hazards, fire suppression costs, or significant increased risks to fire suppression personnel has been found."

*Citizens for Responsibility v. Lane County*, 54 Or LUBA 1, 5 (2007) (internal quotation marks omitted). LUBA concluded that the finding was adequate, while expressing concern that the finding did not identify the evidence in the record that demonstrated compliance with the fire hazard criteria. LUBA's conclusion that there was evidence in the record to support the finding of no significant increased risk rested, in large part, on the October 15, 2004, planning director's decision, which discussed the conditions that the league would have to comply with to obtain approval of the special use permit:

" 'Since ORS 197.770 does not speak to the number of members/uses allowed, the construction of "creature comforts" such as installation of woodstove(s), walling off open structures, creation of a small "office" space, secured storage areas, tarp structures, gravel parking, and the addition of electrical outlets is not seen as significantly conflicting with adjacent and nearby uses[, or] forcing a significant change in or increase in the cost of forestry practices. It has been noted previously that attendance and membership has decreased in recent

years. *As a condition of this approval*, [county] staff will conduct a field survey of the facility, and assess which improvements require building, electrical and wood-stove permits. Since building codes are formulated to ensure the safety of improvements, including eliminating the risk of fire from woodstoves, no significant increase in the risk of fire or risk to fire suppression personnel is foreseen from the improvements made since 1995 (Note: although ORS 197.770 provides apparent amnesty for land uses, it does not do so for building code permits).

" '* * * * *

" 'The walls along the pistol pits will be examined for building code requirements. To the extent that they attempt to serve as physical buffers to the [adjacent] property, they do not represent a "significant change" as per LC 16.211(3). Likewise for the baffles installed in the rifle sheds, whose purpose is to improve safety by limiting the angle of trajectory. Record 143-44.' "

*Id.* at 7 (emphasis added). LUBA concluded that the planning director's decision was unchallenged and, absent a challenge, LUBA

"[could not] agree with petitioners that the county's findings of compliance with the LC 16.211(3) fire hazard/costs/risk standard are inadequate. With respect to petitioners' evidentiary challenge, the testimony we are cited to does not clearly distinguish between potential fire hazards/costs/risks associated with the pre-1995 facility and any hazards/costs/risks associated with the post-1995 improvements. As the planning director found, the post-1995 improvements identified above do not, in themselves, significantly increase fire hazards, significantly increase fire suppression costs or significantly increase risks to fire suppression personnel, with the possible exception of the woodstoves and unpermitted electrical work. However, the director conditioned approval based on bringing the stoves, electrical work and other improvements into compliance with applicable building code standards, which the director found would eliminate any fire risk. Petitioners do not explain why that conclusion is erroneous, or insufficient to ensure compliance with LC 16.211(3)."

*Id.* at 7-8.

■    Petitioners first assert that LUBA should not have relied on the planning director's findings in his decision because the hearings officer's later order supplanted the planning director's decision. We reject petitioners' argument. The Lane County Board of Commissioners' order affirming the hearings officer's decision expressly states that the board agrees with the hearings officer's decision. In turn, the hearings officer's decision states that the planning director's decision "is affirmed as conditioned." The hearings officer's statement is sufficient to incorporate the director's decision, except as it may be conditioned or modified by the hearings officer. The hearings officer discussed and rejected petitioners' argument that the planning director failed to demonstrate that the proposed firearms facility would not, in fact, cause a significant increase in fire hazards, suppression costs, or risks to local fire suppression personnel. Fairly read, each county decision includes the findings of the lower body, except as the later decision modified or conditioned those findings.

■    The question whether LUBA acted correctly in concluding that the county met the fire hazard standards in LC 16.211(3) requires that we determine whether LUBA's review of the county decision for substantial evidence correctly applied that standard of review. In *Wetherell v. Douglas County*, 209 Or App 1, 4, 146 P3d 343 (2006), we explained our review of a LUBA decision under the substantial evidence standard:

> "When reviewing a land use decision, LUBA may reverse or remand if the local government's decision is based on facts that are 'not supported by substantial evidence in the whole record.' ORS 197.835(9)(a)(C). A finding of fact is supported by substantial evidence if the record, viewed as a whole, permits a reasonable person to make that finding. *Younger v. City of Portland*, 305 Or 346, 360, 752 P2d 262 (1988). In turn, our role on judicial review of LUBA's order is to ensure that LUBA has followed the proper 'substantial evidence' standard in reviewing the county's decision. *Id.* at 358-59. ('[W]here LUBA has properly understood and applied the 'substantial evidence' test * * *, a reviewing court should affirm its order[.]'). We are not required to accept LUBA's evaluation of substantiality, however, if the

evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review[.]' *Id.* at 359."

Stated another way, LUBA considers all the evidence in the entire record in evaluating whether a factual finding is supported by substantial evidence and determines whether a reasonable person could make that finding. *Younger*, 305 Or at 356. We review LUBA's determination of the substantiality of the evidence for a local government finding on whether the LUBA opinion is "unlawful in substance" under ORS 197.850(9)(a). Our task is not to assess whether the local government erred in making a finding, but to determine whether LUBA properly exercised its review authority. Thus, we do not substitute our judgment for LUBA's on whether a reasonable person could make a finding of fact based upon the entire local government record. Instead, we evaluate whether LUBA properly stated and applied its own standard of review. If LUBA does not err in the articulation of its substantial evidence standard of review under ORS 197.835(9)(a)(C), we would reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is "so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review." *Younger*, 305 Or at 359.

With that standard of review in mind, we describe the evidence on which LUBA relied in its conclusion that the special use permit will "not significantly increase fire hazard or significantly increase fire suppression costs or significantly increase risks to fire suppression personnel." LC 16.211(3). Most of the evidence presented supports petitioners' concerns. First, the chairman of the Eugene Rural Fire Protection District #1 expressed concern about the possibility of bullets striking rocks or metal, which in turn could create sparks "which could become the beginning of a major forest fire." Second, an 18-year professional firefighter offered written testimony that there are difficulties in fire suppression at the site because the facility is located on a dead-end road. He indicated that wild area firefighters will generally avoid areas that do not easily accommodate emergency vehicles or that will put firefighters at risk by having only one point of egress. Finally, he concluded:

"The plot plan emphasizes the amount of vegetation buffering the shooting areas. A defensible space is defined as an area containing non-combustible fuels. This site is primarily combustible fuels. The Bureau of Land Management, in their publications in regard to wildfires (www.or.blm.gov/nwfire), caution that equipment commonly used around yards, and for landscaping, are capable of starting a fire. I presume such equipment is used to maintain the shooting range areas.

"Testimony already submitted in regard to this application clearly shows a history of increased use. (For example: Addition of the 5-bay pistol range, office, kitchen facilities, conducting weapons training for commercial businesses, and hosting competitive matches.) I submit that any increase in activity, or development in the Urban Interface Area significantly increases the fire hazard, and the risk to fire suppression personnel."

Thus, petitioners presented evidence from fire suppression experts tending to support their position that granting the special use permit would significantly increase: (1) the fire hazard; (2) fire suppression costs; or (3) risks to fire suppression personnel. The county cited the fact that there have been no fires resulting from the league's use of the property as a shooting range. In addition, the county assumes that, by conditioning the approval of the special use permit by requiring the league to obtain building, electrical, and woodstove permits, any risk associated with additional usage will not be significant because the effect of those permits will be to decrease the risk of fire. The county further assumes that those conditions are a fact, which also provides substantial evidence in the entire record supporting LUBA's decision to affirm the county's granting the league a special use permit with conditions.

We must affirm LUBA's decision if it properly understood and applied the substantial evidence test contained in ORS 197.835(9)(a)(C). LUBA considered all the evidence in the record. LUBA specifically referred to the evidence from petitioners' two fire suppression experts. LUBA also noted the hearings officer's finding that there had not been a single documented fire caused by or emanating from the league's firearms training facility. We need not agree with LUBA's

assessment that the evidence supporting the county's decision is substantial. However slender the evidence supporting LUBA's review of the evidence is in the whole record, we cannot conclude that LUBA's decision is unlawful in substance.

Affirmed.