Argued and submitted October 13, 2009, affirmed February 3, 2010

# FRIENDS OF MARION COUNTY,
## Salem Audubon,
## Richard Berkey,
## John Brandt
## and Susan Brandt,
*Petitioners,*

*v.*

# MARION COUNTY
## and Elkhorn Golf and Resort, LLC,
*Respondents.*

## Land Use Board of Appeals
## 2008225; A143149

227 P3d 198

William K. Kabeiseman argued the cause for petitioners. With him on the brief were Carrie A. Richter, Jennifer Bragar, and Garvey Schubert Barer.

Roger A. Alfred argued the cause for respondent Elkhorn Golf and Resort, LLC. With him on the joint brief were

Steven L. Pfeiffer, Corrine S. Celko, Perkins Coie, LLP, and Jane Ellen Stonecipher, Marion County Legal Counsel.

Jane Ellen Stonecipher argued the cause for respondent Marion County.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Marion County approved a plan by Elkhorn Golf and Resort, LLC (developer), to build a destination resort with a golf course and 196 residential units. Petitioners appealed the county's approval to the Land Use Board of Appeals (LUBA). LUBA rejected most of petitioners' assignments of error. Petitioners now seek judicial review of those rejections. We review to determine whether LUBA's order is unlawful in substance, ORS 197.850(9)(a), and whether it is supported by substantial evidence, ORS 197.850(9)(c). We affirm.

The basic facts, as set forth in LUBA's opinion, are not in dispute:

"The subject property is a 464-acre tract located on both sides of the Little North Fork of the Santiam River. In 1980, [developer] applied to the county for a planned development subdivision for a proposed destination resort called Elkhorn Valley Estates. In 1982, the county approved a conceptual plan for the proposed development that authorized (1) an 18-hole golf course, (2) 150 single family dwellings on 10,000-square foot lots, (3) 46 condominium units, and (4) a small commercial area. The 1982 conceptual plan approval imposed a number of conditions, including a requirement that the development be served by an on-site community sewer system.

"At the same time, the county sought to adopt an exception to Statewide Planning Goal 4 (Forest Lands) for the proposed development, as part of legislative amendments subject to periodic review by the Land Conservation and Development Commission (LCDC). In 1984, after two remands of that legislation back to the county, the county adopted and LCDC ultimately approved a Goal 4 exception for the subject property, to allow for the development approved in the 1982 conceptual plan.

"As part of the 1984 exception, the county rezoned the property to Acreage Residential, with a Limited Use Overlay (AR-LU). The limited use overlay zone that was applied to the property included additional requirements to assure that the development described in the 1982 conceptual plan approval would be consistent with most of the draft goal and administrative rule requirements for destination resorts[, now codified as Goal 8], which were then under LCDC's consideration.

"Following the 1984 exception[, developer] completed construction of the 18-hole golf course, but did not seek subdivision plat or other approvals for the residential or commercial uses authorized in the 1982 conceptual plan. Each year [developer] sought and obtained county approval to extend the conceptual plan approval. In 2007, [developer] filed an application for preliminary subdivision approval to create the 150 residential lots, condominium lot, and two commercial lots described in the 1982 conceptual plan, served by a community sewer system, on a 65.3-acre portion of the subject property.

"The county planning commission conducted a hearing on the subdivision application. In response to comments from the Department of Land Conservation and Development (DLCD) and others that intervening changes in law required exceptions to Statewide Planning Goals 11 and 14 to permit the proposed residential density and community sewer system, [developer] modified the application to include requests for reasons exceptions to those goals. The county provided notice of the proposed post-acknowledgment plan amendments to LCDC * * *. After further hearings, the planning commission recommended approval of the goal exceptions. The county board of commissioners conducted a hearing on the recommendation, and ultimately approved the subdivision application and reasons exceptions. [Petitioners then appealed to LUBA.]"

*Friends of Marion County v. Marion County*, 59 Or LUBA 323, 326-27 (2009) (footnotes omitted). The key events in this narrative are:

- 1980: Developer applies to build the destination resort with a golf course and 196 residential units.

- 1982: The county approves a conceptual plan for the resort and passes legislation enabling it. The legislation is reviewed by the LCDC and twice remanded to the county.

- 1984: The county adopts, and LCDC approves, the 1982 plan with revisions. The legislation that includes the revised plan incorporates an exception to Goal 4, relating to Forest Lands. It also rezones the property, and the new classification ensures that the development will meet the requirements, then in the planning

stage and ultimately codified at Goal 8, relevant to destination resorts.

- 1984-2007: Developer completes the golf course and annually applies for, and receives, extensions of the plan approval, including the residential units.

- 2007: Developer applies for subdivision approval for the residential units, including a sewer system. Responding to comments, developer amends the application so as to obtain exceptions necessitated by intervening changes in Goals 11 and 14. The county approves the application. Petitioners appeal to LUBA.

- 2009: With exceptions that are not relevant on judicial review, LUBA rejects petitioners' appeal. Petitioners seek judicial review.

As a preliminary matter, petitioners misstate our standard of review when reviewing LUBA decisions. As we explained in *Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008),

> "[w]e review LUBA's determination of the substantiality of the evidence for a local government finding on whether the LUBA opinion is 'unlawful in substance' under ORS 197.850(9)(a). Our task is not to assess whether the local government erred in making a finding, but to determine whether LUBA properly exercised its review authority. Thus, we do not substitute our judgment for LUBA's on whether a reasonable person could make a finding of fact based upon the entire local government record. Instead, we evaluate whether LUBA properly stated and applied its own standard of review. If LUBA does not err in the articulation of its substantial evidence standard of review under ORS 197.835(9)(a)(C), we would reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.' *Younger* [*v. City of Portland*, 305 Or 346,] 359[, 752 P2d 262 (1988)]."

With that standard of review in mind, we turn to petitioners' assignments of error.

Petitioners first argue that LUBA erred in concluding that the county's decision was supported by an "adequate

factual base," as required by Goal 2, and "substantial evidence," as required by ORS 197.828. Developers first respond that petitioners' Goal 2 argument is not preserved. We agree. However, because the parties accept the proposition that "the Goal 2 requirement for an adequate factual base is equivalent to the requirement for substantial evidence in the whole record," and petitioners clearly preserved their claim that LUBA's decision was not supported by substantial evidence, their Goal 2 argument is redundant, and the fact that it was not preserved is irrelevant.

The basis of the substantial evidence argument in petitioners' first assignment of error is that the evidence that LUBA accepted in affirming the county's exceptions to Goals 11 and 14 derives from facts that may have been true in 1982, but have since changed. According to petitioners, because circumstances have changed since the approvals for the 1982 conceptual plan and 1984 Goal 4 exception, the county should have addressed how those changes affect the need for the project.

We reject petitioner's argument, because LUBA's thorough opinion directly addressed the county's obligation to base its decision on current circumstances, and found that the county had met that obligation. In its opinion, LUBA explained:

"According to petitioners, the studies that supported the 1982 and 1984 decisions regarding the need for recreational facilities or housing next to golf courses are at least 25 years old and do not serve as an adequate factual basis for new exceptions to Goals 11 and 14. For example, petitioners contend that other residential/golf course developments or other resort-like development has occurred in the county in the intervening years and that the county failed to address how these new developments affect the purported need for recreational facilities in the county.

"In addition to incorporating and relying on the 1984 Goal 4 exception findings of need for the proposed facility, the county found that:

" 'the conceptual plan approved in 1982 remains uncompleted, and the golf course lacks any related amenities. The proposed resort will generate significant economic

benefits to the county by increasing tourist-related income. *A resort of this type will fill a particular niche of overnight accommodation need near the golf course that has never been met by Marion County.* The Board finds that this situation creates one of the "reasons" that justifies the proposed exception.' Record 22 (emphasis added).

"In other words, the county found, the need identified in 1984 for this particular type of recreational facility is still unmet in the county. Petitioners do not cite to any evidence that a similar destination resort-type development has been developed in the county in the intervening years. For example, the newly developed golf course/residential or resort-like developments that petitioners cite to all appear to be located within urban areas, with the exception of Black Butte Ranch, which is located outside the county in central Oregon."

*Friends of Marion County*, 59 Or LUBA at 339-40 (footnotes omitted). It is clear that LUBA applied the correct standard of review. The only shortcoming that petitioners identify is LUBA's failure to expressly reject the county's finding because the county did not account for the existence of one facility, the Elkhorn Valley Inn. We conclude that, based on the information in the record, the fact that the county did not address that facility does not imply that LUBA's substantial evidence review was erroneous.

■       Petitioners also argue in their first assignment of error that LUBA failed to require the county to apply Goal 8 to the Elkhorn project. Goal 8's purpose is "[t]o satisfy the recreational needs of the citizens of the state and visitors and, where appropriate, to provide for the siting of necessary recreational facilities including destination resorts." Petitioners contend that the county explicitly approved the development in 1982 and 1984 as a "destination resort," premised on satisfying the county's needs under Goal 8, and, therefore, the county erred in failing to apply the current statutory and Goal 8 requirements for a destination resort.

Petitioners fail to address LUBA's rationale for not applying Goal 8. As defined by the goal and ORS 197.445, a "destination resort" is a "self-contained development" that

provides visitor-oriented accommodations and developed recreational facilities in a setting with high natural amenities. No one disputes that this describes the Elkhorn project. However, as LUBA explained in its opinion:

> "[T]hat the Elkhorn [project] may fit within the definition of a 'destination resort' does not necessarily mean that the statutory criteria governing a destination resort apply when the county approves the resort under the exceptions process rather than pursuant to the statute and Goal 8. * * * [C]ounties have the option of approving a destination resort either (1) under the statute and Goal 8, in which no exceptions are necessary, or (2) by taking Goal 3, 4, 11 and 14 reasons exceptions, as necessary. * * *

> "Nothing * * * clarifies that a destination resort approved pursuant to goal exceptions need not also comply with the statutory and Goal 8 criteria. However, when the statute is read as a whole [it is clear that] the legislature did not intend the statute to effectively occupy the field of potential destination resorts, or preclude counties from approving destination resorts, pursuant to applicable goal exceptions, that may differ from the requirements set forth in the statute.

> "* * * * *

> "Further, [ORS] 197.445 provides that '[t]o qualify as a destination resort under' various statutes, including ORS 197.435 to 197.467, 'a proposed development must meet the following standards[.]' * * * We understand that language to indicate that [a] development that does not meet those standards does not 'qualify' for approval under the destination resort statutes, and therefore cannot take advantage of the ORS 197.450 option to site a destination resort without the necessity of taking goal exceptions. We do not understand that language, or any other statutory or goal language * * * to suggest that a destination resort can be approved only pursuant to the statutory standards."

*Friends of Marion County*, 59 Or LUBA at 333-34. We agree with LUBA's statutory analysis.

■        In their second assignment of error, petitioners argue that LUBA erred by approving the county's "alternatives analysis," that is, its determination that no satisfactory

alternative site exists. A county can approve a Goal 14 exception if the county can show

> "that the proposed urban development cannot be reasonably accommodated in or through expansion of existing urban growth boundaries or by intensification of development in existing rural communities[.]"

OAR 660-014-0040(3)(a). According to petitioners, the rule requires the county to identify the "essential characteristics" of the proposed urban use and then to determine if a development with that essential characteristic can be accommodated in a location that would not require an exception. Petitioners contend that LUBA allowed the county to base its exception on the finding that there was no alternative location that would place the residential component adjacent to the golf course, and that proximity to a golf course is a non-essential characteristic.

We agree with LUBA that, in the circumstances here, the county did not err. When a county is taking a Goal 14 exception to implement a prior, approved development, the required features of that development can be regarded as the "essential characteristics" and can, therefore, be considered in determining whether the development can be reasonably accommodated in areas that do not require an exception. This Goal 14 exception involves a plan that was previously approved by the county. The developer annually sought and received extensions to the conceptual plan approvals, and is now implementing the same plan that was approved. The characteristics of the approved plan can serve, at this date, as the relevant essential characteristics.

The same reasoning applies to the Goal 11 alternatives analysis. Goal 11 provides that, "[l]ocal [g]overnments shall not allow the establishment or extension of sewer systems outside urban growth boundaries * * * except where the new or extended system is the only practicable alternative to mitigate a public health hazard and will not adversely affect farm or forest land." In this case, the 1982 and 1984 approvals *required* that the development be served by an on-site community sewer system. As LUBA correctly concluded, such a sewer system is, therefore, an "essential feature" of the proposed development for purposes of an alternatives

analysis. We therefore reject petitioners' second assignment of error.

■ In their third assignment of error, petitioners assert that LUBA erred in affirming the county's application of Goal 5 requirements. Goal 5 requires a local government to determine whether a development will have an adverse impact on specified resources. Further, a local government generally must make that determination before approving a post-acknowledgment plan amendment (PAPA), such as the one that the county approved here. However, OAR 660-023-0250(3) provides that local governments are not required to apply Goal 5 to a PAPA unless it allows "new uses" that could conflict with a Goal 5 resource. Here, LUBA found that the county correctly determined that approval of the Elkhorn project, including the adoption of exceptions to Goals 11 and 14, did not constitute a "new use" that could conflict with Goal 5 resources because it had previously granted conceptual approval of all the uses and the uses on the Elkhorn project site had previously been acknowledged as permitted. Again, we find LUBA's analysis to be persuasive:

"The focus of OAR 660-023-0250(3)(b) is on a PAPA that 'allows new uses.' The challenged decision is a PAPA because it adopts Goal 11 and 14 exceptions. Whether Goal 5 must be addressed pursuant to OAR 660-023-0250(3)(b) depends on whether those goal exceptions permit 'new uses' of the subject property that were not already permitted under the previously acknowledged comprehensive plan and land use regulations. While the Goal 11 and 14 exceptions may have been necessary to approve the subdivision and complete the proposed resort, we disagree with petitioners that those exceptions authorized 'new uses' of the property, within the meaning of OAR 660-023-0250(3)(b), that were not already authorized under the applicable plan and zoning designation. Under the acknowledged county comprehensive plan and land use regulations, including the AR-LU zone, development of the subject property as a destination resort was not a 'new use.' Nothing about the Goal 11 or 14 exceptions authorized anything more or different from what had already been previously approved and acknowledged, at least with respect to impacts on Goal 5 resources. Therefore, petitioners have not demonstrated that the county erred in concluding that

the decision 'allows new uses' that could be conflicting uses with a particular significant Goal 5 resource site on an acknowledged resource list[.]"

*Friends of Marion County*, 59 Or LUBA at 349. Accordingly, we reject petitioners' third assignment of error.

Affirmed.