454 February 25, 2026 No. 148

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CENTRAL OREGON LANDWATCH,
*Respondent,*

*v.*

JEFFERSON COUNTY,
*Petitioner.*

Land Use Board of Appeals
2025023;
A189176

Argued and submitted January 20, 2026.

David C. Allen argued the cause and filed the brief for petitioner.

Rory Isbell argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Kamins, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

This appeal involves Jefferson County's second approval of an application for a comprehensive plan map amendment and zone change and exceptions to Goals 3 and 14 for a 142.5-acre parcel currently zoned as range land. The subject property is surrounded by the rural residential community of Crooked River Ranch. We reviewed the Land Use Board of Appeals (LUBA) order remanding the county's first approval in *Central Oregon LandWatch v. Jefferson County*, 332 Or App 302, 550 P3d 424 (2024). The county then approved the application again, and LUBA again remanded in part. The county's first three assignments of error relate to LUBA's handling of the county's decision to allow an exception to Goal 3 pursuant to OAR 660-004-0028, which permits a local government to take an exception to a land use planning goal "when the land subject to the exception is irrevocably committed to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable." OAR 660-004-0028(1). In its fourth assignment of error, the county challenges LUBA's conclusion that, because its Goal 3 exception has been remanded, the county cannot, at this point, amend its comprehensive plan as requested in the application. For the reasons explained below, we affirm.

## STANDARD OF REVIEW

As relevant here, we will reverse or remand a LUBA order if it is "unlawful in substance." ORS 197.850(9)(a). "A LUBA order is unlawful in substance if it represents a mistaken interpretation of the applicable law," *Redside Restoration v. Deschutes County*, 344 Or App 383, 391, 581 P3d 501 (2025) (internal quotation marks omitted), or if it misapplies LUBA's standard of review in determining whether a local government's decision is supported by substantial evidence in the whole record, *Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008); *see also* ORS 197.835(9)(a)(C) (providing for LUBA's substantial evidence review of land use decisions); ORS 197.732(6)(a) (providing for LUBA's substantial evidence review of proceedings resulting in approval or denial of a goal exception). As to the latter, "[o]ur task is not to

assess whether the local government erred in making a finding, but to determine whether LUBA properly exercised its review authority." *Citizens for Responsibility*, 218 Or App at 345. "[W]e do not substitute our judgment for LUBA's on whether a reasonable person could make a finding of fact based upon the entire local government record. Instead, we evaluate whether LUBA properly stated and applied its own standard of review." *Id.* If it properly stated the standard, then we may "reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.'" *Id.* (quoting *Younger v. City of Portland*, 305 Or 346, 359, 752 P2d 262 (1988)).

## RELEVANCE OF PROFITABILITY

In its first assignment of error, the county contends that LUBA erred by "conclud[ing] that 'profitability' is not a factor for determining an irrevocably committed Goal 3 exception under OAR 660-004-0028." We assume without deciding that the claim of error is preserved and not waived. On the merits, we are unpersuaded that LUBA erred, based on our understanding of LUBA's reasoning, and therefore affirm.

OAR 660-004-0028(1) allows a local government to take an exception to a land use planning goal "when the land subject to the exception is irrevocably committed to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable." For an irrevocably committed exception to Goal 3, the local government must "demonstrate that only the following uses or activities are impracticable: Farm use as defined in ORS 215.203[.]" OAR 660-004-0028(3)(a) (formatting modified).[1]

---

[1] OAR 660-004-0028(3) provides:

"Whether uses or activities allowed by an applicable goal are impracticable as that term is used in ORS 197.732(2)(b), in Goal 2, Part II(b), and in this rule shall be determined through consideration of factors set forth in this rule, except where other rules apply as described in OAR 660-004-0000(1). Compliance with this rule shall constitute compliance with the requirements of Goal 2, Part II. It is the purpose of this rule to permit irrevocably committed exceptions where justified so as to provide flexibility in the application of

ORS 215.203(2)(a) defines "farm use" to include "the current employment of land for the primary purpose of obtaining a profit in money" by engaging in any of a wide variety of agricultural activities. In *Wetherell v. Douglas County*, 342 Or 666, 160 P3d 614 (2007), the Supreme Court addressed the significance of that provision in local governments' determinations of whether land is subject to Goal 3 in the first instance. The petitioners challenged an administrative rule that provided that "profitability or gross farm income shall not be considered in" local governments' determinations of whether land is suitable for agricultural use. 342 Or at 671 (internal quotation marks omitted). The court rejected our determination that "profit" as used in ORS 215.203(2)(a) refers to gross income, and it also rejected the petitioners' contention that it refers to net operating income. 342 Or at 678-81. Ultimately, the court held that the rule prohibiting any consideration of profitability or gross farm income "conflicts with the definition of 'farm use' in ORS 215.203(2)(a) and Goal 3, which permit such consideration." *Id.* at 682. The court expressly declined, however, to address "the weight to be given to [profitability and, as part of calculating profit, gross farm income] in any particular land use decision." *Id.* at 683. Its decision was expressly "limited to holding that the rule prohibiting the local government even from considering such evidence is invalid." *Id.*

In light of *Wetherell*, whether a potential agricultural use of property is one that might be pursued for the primary purpose of obtaining a profit in money may be relevant to whether that agricultural use qualifies as "[f]arm use as defined in ORS 215.203," OAR 660-040-0028(3)(a),

---

broad resource protection goals. It shall not be required that local governments demonstrate that every use allowed by the applicable goal is 'impossible.' For exceptions to Goals 3 or 4, local governments are required to demonstrate that only the following uses or activities are impracticable:

"(a) Farm use as defined in ORS 215.203;

"(b) Propagation or harvesting of a forest product as specified in OAR 660-033-0120; and

"(c) Forest operations or forest practices as specified in OAR 660-006-0025 (2)(a)."

The county stated, LUBA assumed, and, on review, the parties agree that, for purposes of the current application, only the use described in OAR 660-004-0028(3)(a), *i.e.*, farm use, must be shown to be impracticable. We therefore proceed on that assumption.

and thus whether "farm use" is "impracticable" for purposes of an irrevocably committed exception "because [of] existing adjacent uses and other relevant factors." OAR 660-004-0028(1), (3)(a); *see Wetherell*, 342 Or at 682 (evidence regarding profit is not categorically irrelevant to the determination of whether land is suitable for farm use under ORS 215.203 and Goal 3 in the first instance).

*Wetherell* also makes clear, however, that, even in the initial determination of whether land is suitable for farm use, profitability is far from the only relevant factor. *See* 342 Or at 681 ("[T]he identification of land that is 'suitable for farm use' under Goal 3 can involve the consideration of factors as diverse as soil type, water availability, land use patterns, required energy inputs, and accepted farming practices."). And the analytical significance of profitability is even more remote when a local government is considering an irrevocably committed exception. In that situation, the local government necessarily has already determined that the exception area is land suitable for farm use within the meaning of ORS 215.203. That determination occurs when the land is designated for agriculture in the first instance, and it is not subject to reevaluation in this type of exception proceeding based on the characteristics of the exception area. *See DLCD v. Curry County*, 151 Or App 7, 11-12, 947 P2d 1123 (1997) ("For a county to give exclusive or 'preponderant' weight to the characteristics of the exception area alone, in performing its analysis, would be contrary to the fundamental test for an irrevocable commitment exception, which requires surrounding areas and their relationship to the exception area to be the basis for determining whether the exception is allowable.").

As the above discussion suggests, the precise limitations on a local government's consideration of profitability of a proposed exception area are not entirely clear under existing case law. Nevertheless, it is clear under *Wetherell* and OAR 660-004-0028 that whether a particular parcel can support an agricultural operation that independently yields a profit does not alone answer the question whether it qualifies for an irrevocably committed exception.

Focusing now on the specific case before us, as the county acknowledges in its order, the subject property is

zoned as range land—that is, zoned for grazing[2]—and there is evidence in the record that it would be feasible to graze animals on the property; that transporting livestock to the property would be doable; and that there are other ranches only "minutes away." However, as explained in the county's order, the county did not consider grazing use to be "farm use within the meaning of ORS 215.203," OAR 660-004-0028(3)(a), because it would not be profitable.[3]

LUBA concluded that it was error for the county to deem grazing an impracticable use of the property based solely on it not being a use that would support an independently profitable farming operation. LUBA explained that "the proper test is not 'whether the property is capable of supporting an economically self-sufficient agricultural operation, or [whether it is] property on which a reasonable farmer could make a living entirely from agricultural use of the land.'" (Quoting *Lovinger v. Lane County*, 36 Or LUBA 1, 18-19, *aff'd*, 161 Or App 198, 984 P2d 958 (1999).). Rather, as described above, profitability may have some relevance in determining whether the agricultural uses that are practicable on the property in light of existing adjacent uses and other relevant factors qualify as "farm use[s]" with the meaning of ORS 215.203, but it has more limited relevance than the county gave it.

We agree with LUBA that the mere fact that grazing use of the subject property on its own might not yield a profit is insufficient reason to discount evidence showing that, despite the surrounding uses and the factors identified in OAR 660-004-0028, it remains practicable for a farmer to

---

[2] Per the Jefferson County Zoning Ordinance, the range-land zone was "established to recognize and preserve areas containing predominantly non-irrigated agricultural soils which are being used, or have the capability of being used, for livestock grazing." Per the Jefferson County Comprehensive Plan, Part 2, Goal 3, Policy 1.4, "[u]nirrigated agricultural land outside the boundaries of the North Unit Irrigation District that is composed predominantly of Class IV through VII soils should be zoned Range Land."

[3] In addition to relying on assessments by planning commissioners that, although someone might be interested in using the property for grazing, such use would not be profitable, the county relied on a letter from Scott Duggan, a faculty member with the Oregon State University Extension, explaining that small acreage farms without irrigation in Central Oregon are typically not profitable for grazing. The county also considered the need to bring water to the property or develop a water source on the property.

use the property for grazing livestock. The question before the county was not whether the subject property—limited as it is, and always has been, by its soils and lack of irrigation—is fundamentally suitable for farm use under ORS 215.203. That question was answered in the affirmative when it was designated agricultural land and zoned range land. Instead, the question is whether the property "is *irrevocably committed* to uses not allowed by the applicable goal *because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable.*" OAR 660-004-0028(1) (emphases added); *Curry County*, 151 Or App at 11-12 (emphasizing that an irrevocably committed exception fundamentally "requires surrounding areas and their relationship to the exception area to be the basis for determining whether the exception is allowable"). LUBA did not err in holding that the county analyzed the issue too narrowly when it rejected grazing as a practicable farm use of the subject property based on a lack of profitability alone.[4]

## SUBSTANTIAL EVIDENCE CHALLENGES

In its third assignment of error, the county contends that LUBA erred in holding that the county's determination that grazing was the only farm use that might be practicable on the property was not supported by substantial evidence, particularly in light of LandWatch's contention that a variety of other agricultural uses were practicable farm uses. The county does not challenge LUBA's statement of its substantial evidence standard of review. Accordingly, in light of our standard of review, we understand its argument to be that "the evidence in the case is so at odds with LUBA's evaluation that [we can] infer that LUBA * * * misunderstood or misapplied its scope of review." *Citizens for Responsibility*, 218 Or App at 345 (internal quotation marks omitted). Again assuming that the claim of error is preserved and not waived, we disagree that the evidence in the record indicates that LUBA misunderstood or misapplied its scope of

---

[4] The county emphasizes LUBA's description of profitability as "not [a] factor[]" in determining an irrevocably committed exception to Goal 3. We understand that to mean only that it is not one of the factors listed in OAR 660-004-0028(6). LUBA noted that profit is included in the definition of "farm use" in ORS 215.203, and we do not understand LUBA's statement that it is "not [a] factor[]" to contradict that.

review. LUBA held that the county had not identified substantial evidence or adequately explained why grazing was the only potential farm use that it needed to address. That was not inconsistent with LUBA's standard of review. We therefore reject the county's third assignment of error.

In its second assignment of error, we understand the county to argue that LUBA erred in concluding that some of the county's findings regarding the factors set out in OAR 660-004-0028(6) were not supported by substantial evidence and in reasoning that the county did not adequately explain the link between the facts found and the ultimate question of whether the subject property qualifies for an irrevocably committed exception. Again, we assume without deciding that the county preserved its arguments and that they are not waived. We are unpersuaded that LUBA erred.

Initially, we do not understand the county to challenge LUBA's holding that the "six potential conflicts" that the county identified between farm use of the property and nearby residential uses were "speculative and not supported by substantial evidence." As LUBA explained, given the level of farm use that the subject property could support, and particularly as relevant to grazing (the only potential use the county has considered to date), conflicts such as smoke from field burning, irrigation water spillover, and pesticide application were speculative and untethered to actual possible farm uses of the property.[5] That unchallenged portion of LUBA's order provides a backdrop for further discussion. We now turn to the challenged portion, in which LUBA concluded that some of the county's findings regarding the OAR 660-004-0028(6) factors were not supported by substantial evidence.

Starting with the county's findings regarding parcel size and ownership patterns, we understand the county to take issue with LUBA's view that the county must persuasively explain how parcel size and ownership patterns actually make farm use of the subject property impracticable, rather than simply noting the size and ownership patterns of parcels near the subject property. We agree with

---

[5] LUBA also noted that Oregon's right-to-farm statutes would prevent most of those conflicts from arising in any event. *See* ORS 30.930 - 30.947.

LUBA that the county's findings must link the parcel size and ownership patterns to the ultimate question at issue, which is the practicability of farm use of the subject property because of its relationship to existing uses on nearby property, *Curry County*, 151 Or App at 11-12, and that the county's findings did not do so.[6] *See* OAR 660-004-0028(4) ("A conclusion that an exception area is irrevocably committed shall be supported by findings of fact that address all applicable factors of section (6) of this rule and by a statement of reasons *explaining why the facts support the conclusion that uses allowed by the applicable goal are impracticable in the exception area*." (Emphasis added.)); *see also* ORS 197.350(2) (local government bears burden of persuasion when taking an exception to a statewide planning goal). The same is true with respect to the county's findings as to regional and neighborhood characteristics.

As for the county's findings regarding poor soil quality and lack of irrigation—which are not factors identified in OAR 660-004-0028(6) but which the county and LUBA addressed as "[o]ther relevant factors" within the meaning of OAR 660-004-0028(6)(g)—the county contends that LUBA undervalued those factors due to its incorrect views on profitability. Because we disagree that LUBA misunderstood the significance of profitability—that it is a consideration in evaluating whether a given use is a farm use within the meaning of ORS 215.203 but does not alone answer the question whether an irrevocably committed exception is appropriate—we are unpersuaded that LUBA erred as to the soil-quality and lack-of-irrigation considerations. For these factors to be significant, the county must articulate why they support the ultimate conclusion that, notwithstanding the subject property's designation as agricultural land appropriate for, at a minimum, grazing, the subject

---

[6] We also disagree with the county's understanding of the sentence in OAR 660-004-0028(6)(c)(B) that states, "Small parcels in separate ownerships are more likely to be irrevocably committed if the parcels are developed, clustered in a large group or clustered around a road designed to serve these parcels." The county appears to view that sentence as focusing on the parcels around the subject parcel and indicating, for unarticulated reasons, that the fact that nearby parcels are small means that farm use on the subject property is impracticable. By contrast, it appears to us that LUBA understood, and we agree, that sentence to be discussing exceptions taken for areas made up of multiple small parcels, which is not the situation presented in this case.

property is irrevocably committed to uses not allowed by Goal 3.

Finally, as for roads, we agree with LUBA that the county's finding of a conflict related to road use was premised on road use of the type needed for "intensive irrigated farming practices." To the extent that the county argues that LUBA incorrectly disregarded evidence that grazing use of the property would require regular use of the roads by heavy machinery, cattle trucks, or tractor trailers, we disagree, as the county has not identified any evidence to that effect. To the contrary, the only thing in the record that anyone has identified is a statement by a planning commissioner that the traffic associated with grazing use of the subject property would consist of "a gooseneck trailer with 3 or 4 pair of cattle or 8 or 10 sheep, whatever the selection was for limited grazing season." LUBA did not misstate its substantial evidence standard of review, nor is the record "so at odds with LUBA's evaluation that [we can] infer that LUBA *** misunderstood or misapplied its scope of review." *Citizens for Responsibility*, 218 Or App at 345 (internal quotation marks omitted).

We therefore reject the second assignment of error.

AMENDMENT OF COMPREHENSIVE PLAN

In its fourth assignment of error, the county contends that LUBA erred in reasoning that, in light of its remand of the Goal 3 exception, the county had not yet shown that amendment of the comprehensive plan was "necessary" or "required," as required by Part 5 of the Jefferson County Comprehensive Plan for amendment of the plan. We agree with LandWatch that the county did not preserve its argument. It asserted before LUBA that amendment was necessary or required in light of exceptions to both Goal 3 and Goal 14, but it did not argue that, if only one of the two exceptions was supported, amendment would be necessary or required. Accordingly, we do not address the fourth assignment.

Affirmed.